HODGES *et al. v.* INMAN, CHAIRMAN STATE TAX COMMISSION.*

(Division A.  March 12, 1928.)

[115 So. 893.  No. 26930.]

1. TAXATION. *Statute authorizing proportionate valuation of stock of nonresident corporations for inheritance tax purposes does not apply to estate of resident decedents (Estate Tax Act 1924, section 10).*

   Estate Tax Act (Laws 1924, chapter 134) section 10, authorizing proportionate valuation of stock of nonresident corporations and trusts for inheritance tax purposes, does not apply to estates of resident decedents, in view of sections 4-9.

2. TAXATION. *Where decedent died before enactment of statute increasing exemption from inheritance taxes, exemption under previous statute applied (Estate Tax Act 1924, sections 7, 21; Laws 1926, chapter 158).*

   Where decedent died about two months before enactment of Laws 1926, chapter 158, increasing specific exemption allowed for inheritance tax purposes, ten thousand dollars exemption allowed under Estate Tax Act (Laws 1924, chapter 134) sections 7, only could be allowed, in view of section 21 making tax lien on gross estate of decedent from time of death, since rights and obligations of all parties in regard to payment of such tax must be determined as of date of death of decedent.

3. TAXATION. *In reviewing proceedings of tax commission relating to inheritance taxes, chancery court may determine and fix true*

149 Miss.—50.

*value of estate to ascertain correct amount of tax (Estate Tax Act 1924, section 29).*

Under Estate Tax Act (Laws 1924, chapter 134) section 29, chancery court, in reviewing proceedings of tax commission relating to inheritance taxes, has power to determine and fix true value of estate for purpose of ascertaining correct amount of tax due.

---

*Corpus Juris-Cyc. References: Taxation, 37Cyc, p. 1557, n. 81; p. 1563, n. 22; p. 1574, n. 14; p. 1583, n. 90; On time as of which value of property is to be computed for purpose of estimating inheritance tax, see annotation in 13 A. L. R. 127; 26 R. C. L. 232; 4 R. C. L. Supp. 1654; 5 R. C. L. Supp. 1394. As to liability to pay transfer or inheritance tax in respect of stock in a domestic corporation belonging to estate of nonresident, see annotation in 19 L. R. A. (N, S.) 887; 25 L. R. A. (N. S.) 384; L. R. A. 1917F, 270; 25 R. C. L. 216; 3 R. C. L. Supp. 1461; 6 R. C. L. Supp. 1540.

APPEAL from chancery court of Hinds county, First district.

HON. V. J. STRICKER, Chancellor.

Mrs. Leora B. Hodges, executrix of the estate of J. A. Bowers, deceased, filed in the office of Cecil E. Inman, chairman of the state tax commission, a return for the purpose of settling inheritance taxes due and paid tax shown by return to be due. The chairman made an additional assessment, and the executrix filed a protest and appealed to the state tax commission, and, from its decision, appealed to the chancery court. From the decree of the chancery court, the executrix appeals. Affirmed.

*Chapman, Moody & Johnson,* for appellant.

The state tax commission and the lower court assessed as a part of the gross estate, stock owned by the decedent in the Colorado Fuel & Iron Company of the value of seven thousand two hundred dollars, and stock owned in the American Telephone and Telegraph Company of the value of twenty thousand one hundred sixty dollars, and in addition fixed the specific exemption at ten thousand dollars instead of twenty-five thousand dollars. Where-

fore it is contended that the value of the stock in the two corporations above named amounting to twenty-seven thousand three hundred sixty dollars be deducted from the value of the gross estate, and the deductions should be increased fifteen thousand dollars, being the difference between a specific exemption of ten thousand dollars and twenty-five thousand dollars. The two corporations are nonresident corporations and for the purposes of the tax such stock should be valued in the proportion that the property located within the state of Mississippi bears to the entire property of such nonresident corporations; the corporation first named had no property located in the state of Mississippi, and the value of the property of the corporation last named, located within the state of Mississippi is less than two hundredths of one per cent of the entire property of such corporations. In fact it is the same as if it had no property located in the state of Mississippi. As to this contention we have to say: Sections 5 and 134, Acts of 1924, in part reads as follows: "That the value of the gross estate of the decedent shall be determined by including the value at the time of his death, of all property, real or personal, tangible or intangible, (a) to the extent of the interest therein of the decedent, etc." The word "estate" in said section 5 has a two-fold meaning. That is, it has reference to the thing and the interest of the decedent therein. By referring to this section note that the value of the gross estate (property) of an individual decedent is determined to the extent of his interest in such property which, at his death, is subject to the payment of charges against his estate, the expenses of administration, and is subject to disposition as a part of his estate; or, stated otherwise, the gross estate of a decedent is that which may be subjected to charges against his estate, the expenses of administration and which is subject to disposition, and the value of the same is the decedent's interest therein.

As to the *"situs* of property" and "nonresident estates," there is incorporated in the act: "For the pur-

pose of this tax all property, real, personal, or mixed, located within the state of Mississippi at the date of the decedent's death, shall be deemed property within the state, including stock in a domestic corporation, owned and held by a nonresident decedent, and any property of which the decedent has made a transfer or with respect to which he has created a trust which would be taxable in the estate of a resident within the meaning of this act, shall be deemed to be situated within the state, if so situated, either at the time of the transfer or the creation of the trust or at the time of the decedent's death, including stock in a nonresident corporation or trust, when such nonresident corporation or trust owns or controls property located in this state, but such stock in such nonresident corporation or trust shall be valued in the proportion that the property located within the state of Mississippi bears the entire property of such nonresident corporation or trust." Sec. 10, Chap. 134, Acts of 1924.

The question presented is whether this stock, so valued for the purpose of this tax, is limited to stock owned by a nonresident decedent and not by a resident decedent, or both? If it applies to such stock, owned by a resident decedent, then, of course, the value of such stock "for the purpose of the tax" must be as provided in this clause.

This section does not, for the purpose of the tax, limit the ownership of this class of stock to a nonresident decedent. That it does not we shall endeavor to make clear by analyzing the section. Such an analysis discloses that this section includes, for the purpose of the tax:

(a) "All property, real, personal, or mixed, located within the state of Mississippi, at the time of the decedent's death." (This clause, of course, includes such property as is located within this state whether owned by a resident or a nonresident decedent.)

(b) "Stock in a domestic corporation, owned and held by a nonresident decedent." (This is included for

the reason that stock in a domestic corporation descends according to the laws of the state where the corporation is domiciled or domesticated, and not according to the laws of the state of the decedent's residence. The tax imposed is not a tax on the property but on a transfer of the property, by inheritance or otherwise.) See *Ewing* v. *Warren*, 109 So. 601.

(c) "Any property of which the decedent has made a transfer or with respect to which he has created a trust which would be taxable in the estate of a resident within the meaning of this act, shall be deemed to be situated within the state, if so situated, either at the time of the transfer or the creation of the trust or at the time of the decedent's death." (This has reference to property "in the estate of a resident," wherever situated. That is, property which would be taxable in the estate of a resi· dent regardless of its location. In other words opposite counsel, in their brief clearly recognize "the constitution-al power of the state of the decedent's domicile to impose an estate tax upon all items of intangible personal prop-erty regardless of the fact that they represent the debts or obligations of nonresidents." Thus this kind of prop-erty would be taxable in the estate of a resident. Keep-ing this in mind, note what is included by the next suc-ceeding clause, from which we quote.)

(b) "Including stock in a nonresident corporation or trust, where such nonresident corporation or trust owns or controls property located in this state, but such stock in such nonresident corporation or trust shall be valued in the proportion that the property located within the state of Mississippi bears to the entire property of such nonresident corporation or trust." (In other words in-cluding any property of which the decedent has made a transfer or with respect to which he has created a trust which would be taxable in the estate of a resident, within the meaning of the act, there is included, as a part of that kind of property, stock in a nonresident corporation.)

The act defines transfer as follows: "The word transfer as used in this act shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift, or appointment in the manner herein described."

The act defines the word "decedent" as follows: "The word decedent as used in this act shall include the testator, intestate, grantor, bargainor, vendor, or donor." The word decedent, thus defined, is a general term, and includes of course, a resident as well as a nonresident decedent. As the clause quoted, subdivision (e), makes use of the word "decedent" only the conclusion is inevitable that the legislature intended to include, under this general term, a resident as well as a nonresident decedent. Greater force is given to the argument when attention is directed to the clause quoted in subdivision (b), wherein the words "nonresident decedent," are used. In other words where the legislature intends to limit the general term "decedent" it does so.

It was contended in the lower court that the clause beginning "and any property of which the decedent has made a transfer," etc., is limited solely to a nonresident decedent. Had this been the case the clause would have read, "and any property of which the nonresident decedent, or said decedent, has made a transfer," etc. Had this clause been made to so read, then of course, the next succeeding clause beginning, "including stock in a nonresident corporation," etc., would be limited to such stock as was owned by a nonresident decedent.

However, there are three fatal objections to this contention. In the first place the *situs* of intangible property, owned by a resident decedent would not be defined. This is true because if all of the section following the words, "for the purpose of this tax all property, real, personal, or mixed, located within the state of Mississippi at the date of the decedent's death, shall be deemed

property within the state," be limited solely to a nonresident, then all personal property, tangible or intangible, not "located within the state of Mississippi," though owned by a resident decedent would not be defined."

In the second place the court would be forced to interpolate the word "nonresident" or the word "said" immediately preceding the word "decedent" in said clause. In so doing a legal principle would be violated.

In the third place such a construction would render unconstitutional, the clause beginning, "including stock in a nonresident corporation," etc. If the purpose of such clause be to tax a transfer of stock in a nonresident corporation made by a nonresident decedent, there can be no doubt as to this: "A state cannot impose an inheritance tax upon stock of a foreign corporation held by a nonresident merely because the corporation is doing business within the state and two-thirds of its property is located there." *R. I. & C.* v. *Draughton,* 70 Law. Ed. 475.

Surely this statute will not be so construed as to render this provision unconstitutional: "A statute should not receive such a construction as would render any of its provisions vain and useless." *Martin* v. *O'Brien,* 34 Miss. 21. Wherefore, it is submitted that this section (10) refers to stock in a nonresident corporation owned by a resident decedent; and for the purpose of the tax, such stock "shall be valued in the proportion that the property located in the state of Mississippi bears to the entire property of such nonresident corporation."

Sec. 7, chap. 134, Acts of 1924, is as follows: "That for the purpose of the tax the value of the net estate shall be determined. (a) In the case of a resident by deduction from the value of the gross estate, an exemption of ten thousand dollars." By chap. 158, Acts of 1926, this was amended to read as follows: "That for the purpose of the tax the value of the net estate shall be determined. (a) In the case of a resident, by deduction from the value

of the gross estate the sum of five thousand dollars for the widow and a like sum for each child of the decedent, provided, however, in all cases a minimum exemption of twenty-five thousand dollars shall be allowed whether there be a widow or children or not.''

We contend that the original section, except as to estates where the collection of taxes was concluded while it was in force, is to be considered as if it has never been enacted; but, as to estates where the collection of taxes is still pending, the amending statute is applicable. As to matters, not concluded while it was in force, a repealed statute is no more effective than if it had never been enacted. *Musgrove* v. *Vicksburg & Nashville R. R. Co.,* 50 Miss. 667; *Bradstreet Co.* v. *City of Jackson,* 81 Miss. 233, 32 So. 999; *Crow* v. *Carthledge,* 54 So. 947; *Durant* v. *Attalla,* 101 Miss. 286, 57 So. 914. As to pending matters the amending statute is effective from the date of its approval. If so, it applies to matters pending, but not concluded, prior to its approval. ''The constitutions of some states contain, after the section requiring a statute or section amended to be repeated in its amended form, a further provision that the statute amended 'shall be repealed.' The latter clause has been held sometimes as in itself effecting the repeal, but other courts hold that an express clause of repeal in amendatory statutes is necessary. Without such constitutional provision an amending statute setting out the whole act as amended is, according to the better view, a repeal only as to the portions of the original act left out in the amendment, but as to the portion unchanged in form or substance is considered as a continuation of the original act.'' 26 Am. & Eng. Ency. of Law (2 Ed.) 713; *Nations* v. *Lovejoy,* 80 Miss. 401. Our contention is: That the amending statute, that is, chap. 158, Acts of 1926, continued in force the exemption and, as to estates not concluded, increased the amount from ten thousand dollars to twenty-five thousand dollars.

It was contended in the lower court that this is an exemption statute and must be strictly construed. This would no doubt be true if this statute exempted property from taxation. An inheritance tax, so called, is not in the strict sense of the word a tax. Certainly it is not a tax on property. It is a tax on the privilege of acquiring property. In short a privilege tax. 27 Cyc. 1553. 'An inheritance tax is not a tax on property, but on the transmission of property from the dead to the living.'' *Enochs* v. *Robinson,* 97 So. 534; *Planter's Lumber Co.* v. *Wells,* 112 So. 9. Section 7, as amended by chapter 158, Acts of 1926, is not an exemption of property from taxation. Nor is that section, as amended an exemption of the decedent, as one of a class, on whose estate the privilege tax is imposed. That which in said section, as amended, is denominated an exemption is, in fact, a deduction from the value of the gross estate in order that the net estate, on which the rate is calculated, may be ascertained. The value of the gross estate is determined as of the date of the decedent's death. The value of the net estate is determined by deducting from the value of the gross estate certain items. The value of these items are ascertained after, not as of the date of, the decedent's death.

While the estate is being administered, before the deductions have been, or can be ascertained, even before the amount of the tax can be ascertained, and before the tax is required to be paid, section 7, of the original act, granting an exemption, by way of a deduction, is amended by chapter 158, Acts of 1926, ''so as to read.'' The amended act, granting the exemption, is not changed by the amending act. The latter act continues the exemption by increasing the amount thereof. That being true, the portion of the amended act, except as to the estates concluded while it was in effect, is repealed and it is to be considered as if it had never been enacted. This state, in the cases cited, clearly recognizes this to

be the law.  If so, the original section does not cease to exist but the amending section supersedes it and becomes a part of the original statute for all intents and purposes, as if the amendment had always been there, that is, so far as it affects estates not concluded while the amended statute was in effect.  If this be the law, then as to this estate, chapter 158, Acts of 1926, amending section 7, chapter 134, Acts of 1924, has the same effect as if it had always been in, and a part of, the latter chapter.  That this is the law we direct attention to the following:  "Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the estate for all intents and purposes as if the amendment had always been there."  25 R. C. L. 907, sec. 159; *Blain* v. *Chicago,* 50 L. Ed. 801.

*Morse & Bryan,* for appellee.

The Estate Tax Act of 1924 (chap. 134) requires the inclusion in the return for taxation, the true value of stock in a nonresident corporation owned by a resident decedent.  If the above proposition is not true, then the legislature meant nothing by section 5, of the act, defining the gross estate and, will be presumed to have omitted for the purpose of Inheritance Tax that which goes to make up a tremendous part of large estates.  We start out with the presumption, therefore, that when the legislature defined the gross estate of a decedent and its manner of determination after the inclusion of "the value at the time of his death, of all property, real or personal, tangible or intangible," it manifested its intent by which, and subject to which all of the other provisions of the act must be considered.  It is clear that the legislature could not have intended to wipe out the possibility of taxing under the act the value of stock owned by residents in nonresident corporations.  To impute such in-

tention to the legislature would be far-fetched, unreasonable, and an assumption that it intended a patent and flagrant discrimination as against domestic corporations. There can be no other conclusion, for if appellants' construction of section 10 of the act is tenable this result would be reached. We say that the trend of legislative action in regard to taxation, so far as corporations are concerned, is to at least give our domestic enterprises an even break, if not zealous protection. This is as it should be, as a matter of sound public policy.

These things are vital when we come to construe this particular section 10, which is the bone of controversy in this case. Coming to section 10, we find that the very first statement of section 10 is as follows: "For the purpose of this tax, all property, real or mixed, located within the state of Mississippi at the date of the decedent's death, shall be deemed property within the state, . . ." Thus the *situs* of the property is clearly and succinctly defined. Even if this court by a long line of decisions had not heretofore defined the *situs* of intangibles, as being the domicile of the decedent, the act itself would do so. The quoted words above are followed by a comma and this language, "including stock in a domestic corporation owned and held by a nonresident decedent," which latter phrase is followed by a comma and language which indicates beyond peradventure that the subject-matter concerns nonresidents and which is, "and any property which the decedent has made a transfer or with respect to which he has created a trust *which would be taxable in the estate of a resident* within the meaning of this act." The italicized words, *supra,* undoubtedly refer to property of a nonresident decedent not only because of the context, but by reason of its conjunctive phraseology. It connotes no other meaning, and if resident decedents had made up the subject-matter preceding it there would have been no earthly use to use the language, "which would be taxable in the estate of a resi-

dent.'' Continuing our construction of the language of this section, it will be found that the language which follows the above-quoted phrase is coupled by commas and by modifiers with the key words "nonresident decedent" so that it naturally follows that the words, "including stock in a nonresident corporation or trust when such corporation or trust owns or controls property located in this state" after direct reference to such stock as is part of a nonresident estate, and, the yard stick for measurement of its value, that is, that it "shall be valued in the proportion that the property located within the state of Mississippi bears to the entire property of such nonresident corporation or trust" can be applicable, and applicable only to stock owned by nonresident decedents in nonresident corporations or trusts, which though domiciled elsewhere operate in Mississippi and have physical property located here.

That stock owned by a resident decedent in a nonresident corporation is personal property located within this state and that it can be made the subject of taxation without violating state or Federal constitutional provisions, has been settled by this court, and others, including the supreme court of the United States. In *Ewing* v. *Warren,* 144 Miss. 233, 109 So. 601, this court definitely decided that shares of stock in a corporation are personal property under the laws of Mississippi. In *State* v. *Gulf M. & N. R. Co.,* 138 Miss. 70, 104 So. 689, in construing the income tax Act of 1924, this court held that the tax imposed on residents of the state is on the whole of their income, whether derived from business within or without the state, and that the same was valid. And in *Barnes* v. *Jones,* 139 Miss. 635, 103 So. 773, it was stated by this court that, "It is well settled that a state has the power to tax shares of stock of a foreign corporation which are owned by residents of the state." Also, in this connection, see the very full annotation, with the authorities cited therein, to the case of *Frick* v. *Penn.,* 268

U. S. 473, 69 L. Ed. 1058, 45 Sup. Ct. Rep. 608, as the same appears in 42 A. L. R. 327. Under the caption, "Stock in Foreign Corporations," cases are cited in support of the validity of an estate tax upon the very class of property with which we are concerned here. To save time and space we shall neither quote from this exhaustive note, nor attempt to copy the authorities herein; they speak for themselves. We make this reference and refer to this exhaustive note in answer to counsel's contention in the case at bar that if our construction of section 10 of the Estate Tax Act of 1924 is tenable it would result in a species of double taxation and would be an unfair imposition of a tax upon that which may have been the subject-matter of a similar tax elsewhere. The authorities do not support this contention of appellants.

The lower court did not err in holding that this particular estate is only entitled to the specific exemption of ten thousand dollars as provided in section 7 of the Estate Tax Act of 1924. The Act of 1924 provided that for the purpose of the tax the value of the net estate shall be determined by deducting from the gross estate a specific exemption of ten thousand dollars. The record in this case shows that decedent died on December 21, 1925, which was, to be exact, two months before chap. 158, Laws of 1926 amended said sec. 7 of the Act of 1924. The amending act raised the specific exemption from ten thousand dollars to twenty-five thousand dollars and appellants contend that since they had not paid the tax its correct amount must be determined by making the deduction of the minimum exemption provided by the later Act. They contend that the original section, "exception as to estates where the collection of taxes was concluded while it was in force," is to be considered as if it has never been enacted; but, as to estates where the collection of taxes is still pending, the amending statute is applicable. In the first place, if counsel be correct, it would be putting a premium upon delay in meeting tax obligations.

However, this is not our chief objection to this contention. The tax lien under the Estate Tax Act of 1924 fastened as of the date of death, for it was then that property rights passed and were fixed. We believe this is elementary. The tax lien fastens both by virtue of the Estate Tax Act itself and by holdings of this honorable court. Sec. 100 of the Constitution, which provides that no debt or obligation due the state, or any of its subdivisions, shall be diminished or postponed by the legislature is applicable here. If the tax lien in this case fastened at the date of death and property rights passed and became fixed at that time it could not be seriously contended that the amending Act of 1926 does not run counter, in the case at bar, to this section of the Constitution. Sec. 100 of the Constitution provides that no such liability or obligation can be extinguished, except by payment thereof into the proper treasury, and it has been expressly held under this section that due and unpaid taxes are such obligations and that it was beyond the power of a municipality to remit or release liability to it for them. *Morris, etc., Co.* v. *Adams,* 75 Miss. 410, 22 So. 944.

There is another helpful line of authorities applicable here holding that all doubts are resolved strictly against would-be exemptionists and that all exemption statutes are given that construction most favorable to the taxing power; that the would-be exemptionists must clearly and absolutely establish his right to be left immune from the payment of his proportion of the common burden. For typical cases, to which could be added many others, see: *Greenville Ice & Coal Co.* v. *Greenville,* 69 Miss. 86, 10 So. 574; *Currie-Finch & Co.* v. *Miller,* 123 Miss. 850, 86 So. 579.

Counsel's contention that the twenty-five thousand dollars exemption contemplated by the amendment of 1926 is not supported by reason or authority. As a matter of fact, all cases involving the identical question that we have been able to find hold to the contrary; that is

to say, that such amending acts are not retroactive in their operation. Some of the courts differ as to the reasons underlying this holding, but the result is uniformly the same. The two Mississippi cases cited by appellants holding that the repeal of the right to collect unpaid privilege taxes was taken away by the legislature avoiding the cause of action, and thus ending the suit, are not applicable here even by analogy. The imposition of an estate tax and the right to enforce its collection have not been abrogated or limited since the 1924 Act was passed. There is no question but that the act is a complete scheme today just as it was when approved. There is no limitation upon the right of the state authorities to enforce collection. The amending act increasing the amount of the specific exemption has to do with only one phase of this complete scheme, and there is no question of repeal involved. The two cases cited by appellants which we refer to are *Bradstreet Co.* v. *City of Jackson,* 32 So. 999, and *Crow* v. *Cartledge,* 54 So. 947. In 37 Cyc. 889, it is stated: "A statute creating an exemption from taxation is generally to be construed as a prospective one." In 37 Cyc. 1574, appears the following text matter: "The inheritance tax accrues and becomes fixed as of the death of the testate or intestate, although, according to local practise its payment may be postponed until the executor settles with the legatee or devisee, or until the termination of litigation which may affect the taxable value of the estate."

Not only does the tax accrue and become fixed as of the date of the death of decedent, but by unanimity of opinion it is held that the valuation of property passing by inheritance is also to be valued as of that time. 26 R. C. L. 232. In the case of *Succession of Jno. F. Popp,* 146 La. 464, 83 So. 765, 26 A. L. R. 1446, the supreme court of our sister state expressly held that no reduction, after the death of the property owner, can be made of an inheritance tax provided for by a statute directing that

there shall be levied a tax at the time of the death of decedent, where the Constitution prohibits the release of any indebtedness, liability, or obligation of any individual to the state. While our court held in *Enochs* v. *Roberson*, 91 So. 20, that an inheritance tax is not a debt within the purview of section 4256, Code of 1906 (sec. 6887, Hemingway's Code 1917), yet it could not be successfully controverted that a liability for its payment arises upon death. See *Estate of Leland Stanford* (Calif.), 45 L. R. A. 788. It was held in *Old Colony Trust Co.* v. *Burrell* (Mass.), 131 N. E. 321, 16 A. L. R. 689, that, the rights of all parties including the right of the commonwealth to its tax, vest at the death of the testator." See, also, *Estate of Ferguson* v. *Thatcher, Tax Commissioner* (Wash.), 194 Pa. 711, 13 A. L. R. 122.

See note to the case of *Commonwealth* v. *Wellford* (Va.), 76 S. E. 916, 44 L. R. A. (N. S.) 429. Under the Estate Tax Act itself and by weight of authority it is clear that when decedent in this case died the liability of his estate for the tax became fixed. It was by operation of law. There was nothing further to be done or any machinery to set in motion to fix liability.

Under the Estate Tax Act of 1924 on appeal to the chancery court from an order of the state tax commission making an assessment, the chancellor is vested with the power, and properly determined the true value of the stock in question. When appellants prosecuted their appeal to the chancery court of the First district of Hinds county, it was for the purpose of having said court determine the proper amount of tax due, and that the lower court by taking jurisdiction of the matter on appeal had the power to fully review the proceedings of the state tax commission and to render a decree as to the proper amount of tax due. In sec. 29 of the Estate Tax Act of 1924 it is specifically provided that upon an appeal pending before the said chancery court it "shall have jurisdiction to review the said proceedings and in its discre-

tion may permit other evidence to be introduced not shown in the record, if in the opinion of the court, the equity of the case demands it.''

COOK, J.   J. A. Bowers, a citizen and resident of Indianola, Sunflower county, Miss., died testate, seized and possessed of a considerable estate.   Thereafter Mrs. Leora B. Hodges, as executrix of his estate, filed in the office of the chairman of the state tax commission a return for the purpose of adjusting and settling the inheritance taxes due, and she paid the tax shown by this return to be due.   Upon this return, but not included in the gross estate for taxation, it was shown that the decedent owned at the time of his death one hundred forty-four shares of stock in the American Telephone & Telegraph Company, of the par value of one hundred dollars per share, and two hundred shares of stock in the Colorado Fuel & Iron Company, of the par value of one hundred dollars per share.

Subsequently, the chairman of the state tax commission caused further examination to be made into the value of the estate, and thereupon made an additional assessment by adding to the gross estate the par value of the stock owned by the decedent in these two corporations, and also certain insurance due the estate.   Thereupon the executrix filed a protest and appealed to the state tax commission, the substance of the grounds of protest being as follows: (1) The life insurance payable to the estate was improperly included in the assessment; (2) the stock in these nonresident corporations should not be included as a part of the gross estate, but, if included the value of the stock of the Colorado Fuel & Iron Company was only thirty-six dollars a share, or a total of seven thousand two hundred dollars, instead of twenty thousand dollars as assessed; (3) the Colorado Fuel & Iron Company was organized under the laws of the state of Colorado, while the Amer-

149 Miss.—51.

ican Telephone & Telegraph Company is a New York corporation; and neither of said corporations owns or controls any property located in the state of Mississippi; (4) the executrix paid to the state of Colorado, and the state of New York, respectively, an inheritance tax on the stock owned by the decedent in these corporations; and (5) that an exemption of only ten thousand dollars had been allowed by the commission, whereas an exemption of twenty-five thousand dollars should have been allowed.

On the hearing of this protest, the matter of insurance was satisfactorily adjusted, and the value of the stock of the Colorado Fuel & Iron Company was reduced from twenty thousand dollars to seven thousand two hundred dollars, and this stock at that value, and also the stock owned by decedent in the American Telephone & Telegraph Company, at its par value of fourteen thousand four hundred dollars, was assessed as a part of the gross estate, and the commission declined to increase the exemption to twenty-five thousand dollars. Thereupon the executrix filed a proper petition and bond to secure an appeal to the chancery court to have the action and proceedings of the tax commission reviewed.

At the hearing in the chancery court, for the purpose of avoiding the necessity of taking proof, it was agreed that the market value of the stock of the American Telephone & Telegraph Company was one hundred forty dollars per share, or a total of twenty thousand one hundred sixty dollars, an excess of five thousand seven hundred sixty dollars over the amount at which the tax commission had assessed this stock. The chancery court held that the stock of the American Telephone & Telegraph Company should be assessed at its agreed market value, and, with this addition to the amount of the gross estate, approved and affirmed the assessment, and from this decree of the chancery court the executrix prosecuted this appeal.

Upon the record there are three questions presented for decision namely:

"(1)   Whether for the purpose of inheritance tax shares of stock owned by a *resident decedent* in a *nonresident* corporation must be valued in the proportion that the property of the corporation located within the state of Mississippi bears to the entire property of such nonresident corporations;

"(2)   Whether this particular estate is entitled to the specific exemption of twenty-five thousand dollars; and

"(3)   Whether the chancery court, in reviewing the findings of the commission, has the power to determine the true value of the estate for the purpose of ascertaining the correct amount of tax due."

Appellants contend that, under the provision of the Estate Tax Act of 1924 (chapter 134, Laws of 1924; chapter 133, Hemingway's 1927 Code), where a resident decedent owned stock in a nonresident corporation, its value for the purposes of the tax must be calculated by determining the proportion that the property of the corporation which is located within this state bears to the entire property of the corporation; and, in support of this contention, they rely principally upon the provisions of section 10 of the said Estate Tax Act. The appellee contends that there is no provision of the said Estate Tax Act which relieves the estate of a resident decedent of the tax on any portion of the value of stock of a nonresident corporation owned by such decedent at the time of his death.

There are several sections of the Estate Tax Act of 1924 which are pertinent to the inquiry now before the court. Section 4 defines net estate as follows:

"The net estate of residents and nonresidents taxable within the meaning of this act shall be the gross estate as defined in this act less the credits, deductions, and exemptions, allowed by this act."

Section 5 of the act defines gross estate as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death, of all property, real or personal, tangible or intangible—

"(a)    To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and is subject to disposition as a part of his estate."

This section further defines gross estate as covering (b) the extent of interests in lieu of special estates created by statutes; (c) the extent of decedent's interest in joint holdings; (d) the extent of any property passing under a general power of appointment exercised by decedent by will, or deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death; (e) the extent of amount of insurance receivable by the executor in certain cases; and (f) the extent of any interest of which the decedent has, at any time, made a transfer, or with respect to which he has, at any time, created a trust in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a *bona-fide* sale for a fair consideration in money or money's worth.

Section 6 of the act set out the deductions that may be made from the value of the gross estate of residents to determine the value of the net estate of such resident decedent; while section 7 of the act provides that, in the case of a resident, a specific exemption of ten thousand dollars may be deducted from the gross estate in determining the net estate.

Section 8 of the act set out the deductions that may be made from that portion of a nonresident's gross estate which at the time of his death is situated in the state of Mississippi, in order to determine the value of his net estate that is taxable in this state; but section 9 provides that these deductions shall not be allowed in the

case of a nonresident, unless the executor includes, in the return required to be filed, the value, at the time of the decedent's death, of that part of the gross estate of the nonresident not situated in the state; and it further provides that the specific exemption allowed nonresidents shall be determined on the basis of the proportion of the specific exemption allowed residents that the property located in this state bears to the entire property of decedents wherever situated.

Section 10 of the act reads as follows:

"*Situs of Property Defined—Nonresident Estates.*— 10. For the purpose of this tax all property, real, personal, or mixed, located within the state of Mississippi at the date of the decedent's death, shall be deemed property within the state, including stock in a domestic corporation, owned and held by a nonresident decedent, and any property of which the decedent has made a transfer or with respect to which he has created a trust which would be taxable in the estate of a resident within the meaning of this act, shall be deemed to be situated within the state, if so situated, either at the time of the transfer or the creation of the trust or at the time of the decedent's death, including stock in a nonresident corporation or trust, when such nonresident corporation or trust owns or controls property located in this state, but such stock in such nonresident corporation or trust shall be valued in the proportion that the property located within the state of Mississippi bears to the entire property of such nonresident corporation or trust."

It seems clear to us that the provisions of section 10 of this act which authorize a proportionate valuation of stock of nonresident corporations and trusts has no application to the estates of resident decedents. By this section, it is first provided that—"For the purpose of this tax all property, real, personal, or mixed, located within the state of Mississippi at the date of the decedent's death, shall be deemed property within the state,

including stock in a domestic corporation, owned and held by a nonresident decedent.''

With only the interposition of a comma, the above-quoted sentence continues with language which clearly and unmistakably shows that the remaining provisions of this section apply only to estates of nonresident decedents, this language being:

''And any property of which the decedent has made a transfer or with respect to which he has created a trust which would be taxable in the estate of a *resident* within the meaning of this act, shall be deemed to be situated within the state, if so situated, either at the time of the transfer or the creation of the trust or at the time of the decedent's death, including stock in a nonresident corporation or trust, when such nonresident corporation or trust owns or controls property located in this state, but *such stock* in such nonresident corporation or trust shall be valued in the proportion that the property located within the state of Mississippi bears to the entire property of such nonresident corporation or trust.''

The property referred to and described in the last above-quoted sentence is expressly limited to such property of that description as would be taxable in the estate of a resident within the meaning of the act, thus showing that the purpose of this provision was to impose a tax on nonresident decedents, upon the classes of property thereby described, and the remaining portions of the section refer to and are so connected with the preceding limitations as to clearly indicate that they were intended to apply to the estates of nonresident decedents only. This interpretation of the provisions of this section is in accord with the caption, ''*Situs* of Property Defined; Nonresident Estates,'' which the legislature gave to this section, and which appears in the enrolled act as the same is filed and preserved in the office of the secretary of state.

The appellants next contend that in determining the value of the net estate a specific exemption of twenty-

five thousand dollars, instead of ten thousand dollars, should have been allowed. The Act of 1924, chapter 134, provided that for the purpose of the tax the value of the net estate shall be determined by deducting from the gross estate a specific exemption of ten thousand dollars, but by chapter 158, Laws of 1926, this exemption was increased to a minimum amount of twenty-five thousand dollars. The record in this case shows that the decedent, J. A. Bowers, died on December 21, 1925, which was about two months before the enactment of chapter 158, Laws of 1926, which increased the pecific exemption allowed to be deducted. The appellants contend, however, that, since the estate tax due had not been finally assessed and paid, but was in process of adjustment at the time of the enactment of the said chapter 158, the increased exemption should be allowed. We do not think there is any merit in this contention. An inheritance or estate tax accrues and becomes fixed as of the date of the death of the decedent, and the value of the property is to be determined for inheritance tax purposes as of that date. By the express provision of section 21 of chapter 134, Laws of 1924, this tax is made a lien upon the gross estate of the decedent, except such part thereof as may be allowed by the court for the payment of charges against the estate and the expenses of administration, from the time of the death of the decedent, and the rights and obligations of all parties in regard to the payment of such a tax are to be determined as of the date of the death of the decedent. *In re Stanford,* 126 Cal. 112, 54 P. 259, 58 P. 462, 45 L. R. A. 788; *Old Colony Trust Co., Executor* v. *Burrell,* 238 Mass. 544, 131 N. E. 321, 16 A. L. R. 689; *Estate of Ferguson* v. *Thatcher, Tax Commissioner,* 113 Wash. 598, 194 P. 771, 13 A. L. R. 122, and case note; 37 Cyc., p. 1574, 26 R. C. L., sections 204 and 175.

We do not understand that counsel for appellants contend that, in reviewing the findings of the tax commis-

sion, the chancery court does not have the power to determine the true value of the estate for the purpose of ascertaining the correct amount of tax due. By section 29 of the Estate Tax Act of 1924, it is specifically provided that, upon appeal to the chancery court, it "shall have jurisdiction to review the said proceedings and in its discretion may permit other evidence to be introduced not shown in the record if in the opinion of the court the equity of the case demands it." It is further provided that the chancery court shall render a decree, and that from such decree an appeal may be taken to this court. Under this broad power to review the proceeding of the commission, and in so doing to take and consider other evidence than that appearing in the record of the proceedings before the commission, the chancery court has the power to determine and fix the true value of the estate for the purpose of ascertaining the correct amount of tax due.

We are of the opinion that the decree of the court below is, in all respects, correct, and it will therefore be affirmed.

*Affirmed.*