## Bridge vs. Ward and others.

HOMESTEAD. (1, 6) *May be sold on liens which attached before it became a homestead.*

WILLS. (2, 3) *Land devised for life, with restriction on devisee's power of sale, subject to sale on execution.* (4) *Title to real estate passes at death of testator, not on probate of will.*

LIEN OF JUDGMENT. (5, 6) *Judgment against devisee; when lien attaches.*

1. If a judgment debtor, owning two lots of land, one of which is his homestead, sells his homestead and thereafter occupies the other lot as such, the lien of the judgment on such other lot is not thereby removed.

2. *It seems* that a will may be so framed that an alienation by the devisee of his land therein devised, whether such alienation be by voluntary act of the devisee or by sale on execution against him, will terminate the estate so devised (whether the fee or a life estate); and any estate in remainder which the will creates, will take effect immediately.

3. But where there is a devise of a life estate in land with a mere provision restricting the devisee from selling the same, this will not prevent a sale of the devisee's interest *on execution* against him.

4. Although by the statutes of this state (R. S., ch. 97, sec. 21; Tay. Stats., 1207, § 21), a will is not " effectual to pass either real or personal estate *unless* it shall have been duly proved and allowed," yet when probate is granted, the will takes effect, by relation, *from the death of the testator*, and vests the title to the property in the devisee or legatee from that moment.    An inaccurate expression on this subject in *Markwell v. Thorn*, 28 Wis., 548, corrected.

5. A judgment against the devisee of land, existing and unsatisfied at the time of the testator's death, *held* to have become a *lien from that time* on the land devised.

6. X., by his last will, devised to plaintiff a life estate in a lot of land in a certain city (with remainder over to plaintiff's son), and restricted plaintiff from selling the same. When X. died, plaintiff owned a homestead is said city, but immediately thereafter, and before the will was proved, sold it, and removed with his family to the lot so devised, which he has since resided upon and claims as his homestead. Defendants hold an unsatisfied judgment against plaintiff, recovered before the death of X. *Held*, that they have a right to sell upon such judgment plaintiff's interest in the lot devised to him.

APPEAL from the Circuit Court for *Winnebago* County.

The case made by the complaint is as follows:    On the 21st of October, 1869, one Samuel Bridge, the father of the plaintiff, died seized of a certain lot of land in the city of Oshkosh, containing less than one-fourth of an acre.    By his last will and testament, the said Samuel devised to the plaintiff a life estate in said lot and in the rents, issues and profits thereof, with remainder over to a son of the plaintiff ; " and he therein restricted the plaintiff from selling the same."    When the testator died, the plaintiff was the owner of a homestead in said city ; but immediately thereafter, and before such will was proved, he sold it and removed with his family on the lot thus devised, which he claims as his homestead, and upon which he has ever since resided.    Afterwards, and on or about November 25th, 1869, the will was proved in the proper court, and duly allowed.

The defendants *Ward* and *Brown* held a judgment against the plaintiff, recovered in the circuit court for Winnebago county, in 1867, and in 1873 they caused an execution to be

issued thereon, and placed the same in the hands of the defendant *White*, then the sheriff of that county, who levied the same upon the interest of the plaintiff in the lot thus devised by the testator, Samuel Bridge, and has advertised and is about to sell such interest of the plaintiff in said lot, by virtue of such execution.

The action is to restrain the sheriff from making such sale, and to obtain the judgment of the court that the lot is the plaintiff's homestead, and that the judgment of *Ward* and *Brown* is not a lien upon it.

A demurrer to the complaint as not stating facts sufficient to constitute a cause of action, was sustained; and plaintiff appealed from the order.

*James Freeman*, for appellant, argued, 1. That the title to the premises did not vest in the plaintiff until the probate of the will (R. S. 1858, ch. 97, sec. 21, and ch. 100, sec. 7; 28 Wis., 548; 3 Washb. R. P., 461); and that, as he had previously sold his old homestead, there was no interval when the lien of the judgment could attach. 2. That a sale of the premises on execution would defeat the purpose of the will, and thereby cause a forfeiture. 1 Redf. on Wills, 728–9. 3. That the defendants had been guilty of laches, such as deprived them of any rights they might otherwise have had.

*Gabe Bouck*, for respondent, contended that the probate of the will was not the foundation of plaintiff's title, but only the evidence of it; that the title vested upon the death of the testator, and, the lien having then attached, plaintiff could not afterward, by his own act, divest it. 1 Jarman on Wills, 218; 2 Greenl. Ev., § 339; *Fuller ex parte*, 2 Story C. C., 327; *Spring v. Parkman*, 3 Fairf. (12 Me.), 127; *Strong v. Perkins*, 3 N. H., 517; *Hall v. Ashby*, 9 Ohio, 96; *Fleeger v. Pool*, 1 McLean, 189; *Smith v. Milles*, 1 Term, 475–480; *Woolley v. Clark*, 5 Barn. & Ald., 744; *Wankford v. Wankford*, 1 Salk., 299; *Foster v. Bates*, 12 M. & W., 226; *Thorpe v. Stallwood*, 6 Scott N. R., 715; *Shumway v. Holbrook*, 1 Pick., 114; *Dublin v. Chadbourn*,

16 Mass., 433; *Hutchins v. State Bank*, 12 Met., 427; *Swazey v. Blackman*, 8 Ohio, 5; *Bailey v. Bailey*, id., 245; *Wilson v. Tappan*, 6 id., 172; *Moore v. Greene*, 2 Curtis C. C., 202; *Tompkins v. Tompkins*, 1 Story C. C., 555; *Wilkinson v. Leland*, 2 Peters, 655.

LYON, J.   I.   It is claimed that under the provisions of the will of his father, a sale by the plaintiff of his interest in the lot in controversy would work a forfeiture of such interest, and at once vest the estate in remainder; and that a sale of such interest on an execution against the plaintiff would produce the same results.

It is quite probable that the will might have been so framed that an alienation of the plaintiff's interest in either of the modes just mentioned would determine his estate in the lot. Judge REDFIELD, in his treatise on the law of wills, says: "There is no question the testator may bequeath property for the mere purpose of benefiting the donee personally, and provide that no creditor or purchaser shall take any interest or benefit of the same.   *   *   *   And it is now settled, that if such is the clearly declared purpose of the testator, the bequest will fail upon the legatee or devisee becoming insolvent or bankrupt, even where it occurs during the life of the testator; and any gift over will immediately take effect, in that case, upon the death of the testator." And again he states as a rule, "that either a life or an absolute estate by bequest may be legally so framed as to cease upon the happening of a particular event." Vol. 2, pp. 668–9.

But we have no such case before us.   The testator devised to the plaintiff a life estate in the lot, and, although he restricted the plaintiff from selling the same, it does not appear that he provided that the estate so devised should terminate in the event of an alienation thereof.   Failing so to provide, the rule is stated by the same learned author to be, "that property cannot be given either for life, or absolutely, without the power of alienation being incident to the gift."   Vol. 2, p. 668.

Unless protected by the homestead laws, we conclude that the interest of the plaintiff in the lot in controversy is liable to be sold by virtue of an execution issued on a judgment against him.

II. It is further claimed on behalf of the plaintiff, that it was competent for him to sell his original homestead and acquire another homestead, without the latter being subject to the lien of a judgment previously recovered against him. This is doubtless a correct position, provided such lien had not attached thereto before it became the plaintiff's homestead. If a judgment debtor who owns two lots of land, one of which is his homestead, sells his homestead and thereafter occupies the other lot as such, we do not understand that the lien of the judgment thereon is thereby removed. Hence, in this case, it becomes important to determine whether the judgment had become a lien upon the plaintiff's interest in the lot in controversy before he occupied it as a homestead. If it did, it seems clear that such occupancy did not divest the lien.

III. We are thus brought to consider the question, When did the interest or estate devised to the plaintiff, vest in him? If it so vested at the death of the testator, the judgment then became a lien upon it, and the subsequent occupancy of the lot by the plaintiff as his homestead could not operate to divest such lien, or deprive the judgment creditors of the plaintiff of their right to have his interest in the lot sold on execution. But if the title only vested in the plaintiff from the time the will was proved in the county court and allowed, it would seem that the judgment never became a lien, and that the plaintiff is entitled to the relief demanded in the complaint.

The position of the plaintiff is, that he had no estate whatever in the lot until the will of his father was proved; and to support the same he relies mainly upon the following statute: "No will shall be effectual to pass either real or personal estate, unless it shall have been duly proved and allowed in the county court as provided in this chapter, or, on appeal, in

the circuit court or supreme court; and the probate of a will of real or personal estate, as above mentioned, shall be conclusive as to its due execution." R. S., ch. 97, sec. 21 (Tay. Stats., 1207, § 21).

The same provision is found in the statutes of several of the states, and has often been considered by the courts, and, so far as we are advised, the decisions have been uniformly against the construction contended for by the plaintiff. The reasoning of Judge STORY in *Ex parte Fuller*, 2 Story C. C., 332, when considering the same provision in the statutes of Maine, is entirely satisfactory to our minds; and we adopt his construction of the statute, without hesitation, as the true one. After quoting the statute, the learned judge says: "By the probate, when granted, the will, under the section, takes effect by relation back from the death of the testator. It recognizes and vests the title in the devisee from that moment. It would otherwise happen, that if he should die before the probate, having accepted of the devise, no title could vest in him; but the bounty of the testator would be defeated. Such a construction of the section would be productive of the grossest mischiefs; and there is not a word in the section which authorizes or even countenances it. The section only provides, that no will shall be effectual to pass real estate, *unless* it shall have been duly proved; not, *until* it shall have been duly proved. When proved, it is to all intents and purposes a will; and it is to operate upon the interests of the testator when he intended, that is, from the time of his death."

In the brief of counsel for the plaintiff, the case of *Markwell v. Thorn*, 28 Wis., 548, is cited as an authority against the views above expressed. It is true that the probate of a will is incidentally mentioned in that case as passing title to a devisee. The expression is inaccurate. It should have been said that the probate rendered the will effectual to pass the title. But the inaccuracy is entirely immaterial in that case. The question there determined was the effect upon the title of a devisee

of a failure to issue letters testamentary after probate, and it was held that, " the issuing thereof is not a condition precedent to rendering the will thus allowed effectual to pass the title." (P. 559).

Upon the whole case we are of the opinion that the complaint fails to state a cause of action, and hence, that the demurrer thereto was properly sustained.

*By the Court.* — Order affirmed.